# Charles Shoemaker, Casper Singer, Peter Aston, and Robert Ralston, assignees of John Myer, a bankrupt, *against* Matthew Keeley.

### S. C. 2 Dall. 213.

Commissioners may assign debts due to the bankrupt, but not torts.

CASE.   The declaration consisted of two counts.   The first stated, that "M. K. on the 12th May 1785, in consideration "that the said J. M. before he became bankrupt, and before "the same day, had bargained, sold, and conveyed, to him "the said M. a certain tract of land, of the value of 75l. sit-"uate in Brunswick township, in Berks county, he the said "M. by his contract and agreement in writing, then and there "made with and delivered to the said J. M., assumed upon "himself, and to the said J. before he became bankrupt, "promised that he would well and truly deliver to the said J. "or his order, fifty dozen bottles of Port and Claret wine; "and in fact the plaintiffs say, that he, the said M. afterwards, "to wit, the 14th day of September, in the same year, at the "county aforesaid, *with intent the said J. M. then "and there craftily and subtlely to deceive and de-"fraud, under pretence of execution and satisfaction of the "said agreement, did then and there deliver to him, the said "J. before he became bankrupt, fifty dozen bottles of liquor "as and for fifty dozen bottles of Port and Claret wine, and "did then and there declare to him the said J. M., that the "said fifty dozen bottles contained good and merchantable "Port and Claret wine, when in truth, and in fact, the said "liquors therein contained, at the time of the delivery there-"of, or at any time since, were neither Port nor Claret wines, "but some vile and unwholesome mixtures, corrupt, sour, "and hurtful to man's body, which the said M. then and "there well knew."

The second count stated, that "Whereas also the said M., "afterwards, to wit, the same day and year, at the county "aforesaid, in consideration that the said J. before he became "bankrupt, and before the same day and year, at the special-"instance and request of the said M. had bargained and sold "to him the said M. a certain other tract of land, of the value "of 75l. situate in B. township aforesaid, he, the said M. "bargained and sold to the said J. before he became bank-"rupt, other fifty dozen bottles of liquor; and, upon the same

[Shoemaker et al. *v.* Keeley.]

" bargain and sale the said M. falsely and deceitfully did de-
" clare, and affirm, to the said J. that the liquor therein con-
" tained was Claret wine; and in fact the said plaintiffs say,
" that the said liquor, at the time of the bargain and sale
" aforesaid, was not Claret wine, but some vile and worthless
" mixture, corrupt, sour, and hurtful to man's body, which
" the said M. then and there well knew.   By which said sev-
" eral deceits and misdoings of him the said M., he the said
" J. before he became bankrupt, and the said plaintiffs since
" he became bankrupt, have been very much prejudiced, (to
" which said Charles, Casper, Peter and Robert, all and sin-
" gular the goods and chattels, rights and credits, of the said
" J. the bankrupt, were in due manner assigned, according
" to the form of the several acts of assembly of Pennsylvania,
" made and provided concerning bankrupts, by indenture
" bearing date the        day of        1786, at the county afore-
" said, and now brought here into court, under the hands and
" seals of M. C., G. H., P. B., and R. B. commissioners, by
" virtue of a commission of bankruptcy, under the great seal
" of Pennsylvania, directed to them the said M. C., G. H.,
" and P. B.) and have received damage to the value of 500l.
" and therefore they bring suit, &c."
    To this declaration there was a general demurrer.

    *Mr. Ingersoll, in support of the demurrer, urged,   [*247
that the suit was instituted in its present form, to take
away the defendant's right to a set-off, he having a much
larger demand against the now plaintiff.   If the assignees
had brought *assumpsit*, which they might well do, the de-
fendant would have the benefit of a set-off.   Doug. 101.
Under the bankrupt act passed 16th September, 1785, § 7, pa.
647, the commissioners were authorised to assign debts due to
the bankrupt for the use of his creditors, but not torts.   And
a party cannot, in any case of a tort, liquidate his own de-
mand for damages, and swear to it before the commissioners.
It can only be ascertained by the intervention of a jury.
Doug. 563.

    Mr. Moses Levy for the plaintiffs, contended, that under
the assignment of the commissioners of bankrupt, the as-
signees might sue, as fully as the bankrupt himself might do.
Bankrupt Law, § 4, pa. 646.   Chattels are either in possession
or in action, and both may be assigned.   2 Bla. Com. 389.
All the personal estate and effects of the bankrupt may be
assigned.   Ib. 485.   Cooke, in his Appendix of Precedents,
pa. 45, gives the form of a provisional assignment by the
commissioners.

    Executors of a testator, and administrators of an intestate,
are assignees in the eye of the law.   Executors may maintain
a suit against a party for a tort, but it will not lie against
them.   Cowp. 373.   A right to a possibility, or contingent

[Shoemaker et al. *v.* Keeley.]

interest, not vested in the bankrupt, may be assigned. 3 Wms. 132. Fearns 439, 440. Cooke's Bankrupt Law, 224, 225.

Suppose the case of a defendant taken in execution at the suit of one before he becomes bankrupt, and the sheriff permits him to escape; shall not the assignees recover against the sheriff for the escape, whether voluntary or negligent?

Or if one under certain circumstances recommend another to the bankrupt, as a good and solvent person, and he turns out otherwise, shall not his assignees recover? Vid. 3 Term Rep. 60.

Or if a ship is sunk by the carelessness or malice of the captain, shall the assignees of the party suffering, who is since become bankrupt, be without remedy?

Or should one maliciously tear the note of a bankrupt, whereby a considerable debt may be lost, shall the legal idea of a tort shield the trespasser from making a reparation in damages, at the suit of the assignees?

Mr. Ingersoll in reply, said that the commissioners under § 6 of the bankrupt law, might convey or assure any lands, and therefore might assign a possibility; pa. 647. Choses in action *are within the bankrupt laws. Cooke's Bankrupt Laws, 228. But these all respect mere matters of contract. A covenant to renew a lease is not within the bankrupt law. Ib. 222. Cites 2 Vern. 97. Balance of accounts shall only be claimed by commissioners of bankrupt by stat. 5 Geo. 2, c. 30, § 28. Cooke 301.

*Per Cur.* The form of the action is decisive. The damages here are as uncertain as in any species of trespass, and cannot be assigned over by the commissioners. Matters of mere tort were not contemplated by the legislature when they enacted the bankrupt law. The assignees might, if they had thought proper, have brought *assumpsit*, and then the defendant would have had the benefit of a set-off; but, the suit in its present form, cannot be supported.

Judgment for the defendant.